IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TINKER, INC., d/b/a The Hamburger Man, | § § § |
| Plaintiff, | § § |
| v. | §  Civil Action No. 3:14-CV-2878-L |
| | § |
| BARBARA POTEET d/b/a The Hamburger Man and CAPTAIN BILLY WHIZZBANG'S HAMBURGERS, INC. d/b/a The Hamburger Man, | § § § § § |
| Defendants. | § |

# MEMORANDUM OPINION AND ORDER

The court makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure ("Rule 52") following a three-day bench trial on October 24, 25, and 26, 2016.[1] For the reasons that follow, the court **finds** and **concludes** that Tinker, Inc. ("Tinker Inc." or "Plaintiff") is not entitled to recover on its claims of: (1) trademark

---

[1] In preparing this memorandum opinion and order, the court carefully considered the trial testimony and exhibits and applied the standard in this circuit for findings of fact and conclusions of law. *See Century Marine Inc. v. United States*, 153 F.3d 225, 231 (5th Cir. 1998) (discussing the standard for findings and conclusions under Rule 52). In accordance with that standard, the court has not set out its findings and conclusions in "punctilious detail" or slavishly traced the claims issue by issue and witness by witness, or indulged in exegetics, parsing or declaiming every fact and each nuance and hypothesis." *See id*. The court, instead, has limited its discussion to those legal and factual issues that form the basis for its decision. *Id*. The facts contained herein are either undisputed, or the court has made the finding based on the credibility or believability of each witness. In doing so, the court considered all of the circumstances under which the witness testified, including: the relationship of the witness to the Plaintiff or Defendant; the interest, if any, the witness has in the outcome of the case; the witness's appearance, demeanor, and manner of testifying while on the witness stand; the witness's apparent candor and fairness, or the lack thereof; the reasonableness or unreasonableness of the witness's testimony; the opportunity of the witness to observe or acquire knowledge concerning the facts to which he or she testified; the extent to which the witness was contradicted or supported by other credible evidence; and whether such contradiction related to an important factor in the case or some minor or unimportant detail. When necessary, the court comments on the credibility of a witness or the weight to be given to a witness's testimony. Where appropriate, any finding of fact herein that should more appropriately be regarded as a conclusion of law shall be deemed as such, and vice versa.

**Memorandum Opinion and Order – Page 1**

infringement in violation of the Lanham Act; (2) unfair competition in violation of the Lanham Act and; (3) unfair competition under Texas law against Defendants Barbara Poteet and Captain Billy Whizzbang's Hamburgers, Inc. ("Captain Billy's Inc.") (collectively, "Defendants"). The court, therefore, will enter judgment in favor of Defendants on Tinker Inc.'s claims in accordance with this memorandum opinion and order.

For the reasons that follow, the court **finds** and **concludes** that Defendants are not entitled to recover against Tinker Inc. on their counterclaims of: (1) unfair competition in violation of the Lanham Act; (2) unfair competition under Texas law; (3) trademark registration obtained by fraud; (4) tortious interference with business relations and; (5) business disparagement. The court, therefore, will enter judgment in favor of Tinker Inc. on Defendants' counterclaims in accordance with this memorandum opinion and order.

### I. Procedural Background and Findings of Fact

On August 11, 2014, Tinker, Inc. d/b/a The Hamburger Man brought this action against Barbara Poteet d/b/a The Hamburger Man for trademark infringement in violation of the Lanham Act. After filing her answer, Barbara Poteet filed a Certificate of Interested Persons and named Captain Billy Whizzbang's Hamburgers, Inc. ("Captain Billy's Inc.") as an entity that is financially interested in the action's outcome. On March 30, 2014, Plaintiff filed an Amended Complaint that added Captain Billy's Inc. as a defendant.

Plaintiff is suing Defendants for the following alleged violations of the Lanham Act: trademark infringement in violation of 15 U.S.C. § 1114(1), and Unfair Competition in violation of 15 U.S.C. §§ 1125(a) and (d). Plaintiff is also suing Defendants for common law unfair competition under Texas law. Plaintiff seeks a permanent injunction to prevent Defendants use of

**Memorandum Opinion and Order – Page 2**

the trademark "The Hamburger Man" (the "Mark"). In response to Plaintiff's Lanham Act claims, Defendants assert the following affirmative defenses: (1) prior use, (2) fraud, (3) statute of limitations, (4) laches, (5) acquiescence and estoppel, (5) waiver, and (6) unclean hands. Defendants are countersuing Tinker, Inc. for: (1) unfair competition in violation of 15 U.S.C. § 1125(a); (2) common law unfair competition under Texas law; (3) trademark registration obtained by fraud in violation of 15 U.S.C. § 1120; (4) tortious interference with business relations; (5) and business disparagement. Defendants seek a permanent injunction to prevent Plaintiff's use of the Mark.

A three-day bench trial was conducted on October 24, 25, and 26, 2016. During the trial, the court heard testimony from Richard Barton, Michael Barton, Barry Bell, Barbara Poteet, and Mark Poteet. Prior to trial, the court admitted Plaintiff's Exhibits Nos. 1-2, and 5-54; and also admitted Defendants' Exhibits Nos. 4, 12-14, 16, 18-21, 24, 25, and 26. All other evidence was admitted subject to objections and the parties' agreement to withdraw exhibits during or at the end of the trial.[2] On April 26, 2017, Plaintiff and Defendants, submitted their proposed findings of fact and conclusions of law. Based on the evidence and the arguments presented, the court makes the following findings of fact in accordance with Rule 52.

---

[2] To expedite the bench trial proceedings, some objections to exhibits were ruled on at the time the objections were made, while other objections were taken under advisement. The court explained that any outstanding objections would be addressed, as necessary, in the court's findings of fact and conclusions of law. Specifically, the court explained that if there was an objection to a particular exhibit and the exhibit was discussed and used by the court in reaching a decision, this meant that the court overruled the objection. On the other hand, if an objection was not specifically addressed in the court's findings and conclusions, this meant that the court either sustained the objection or concluded that the exhibit was not necessary for its findings of fact and conclusions of law. The same is true with respect to any objections to witness testimony that were not ruled on during the course of the trial.

**Memorandum Opinion and Order – Page 3**

In 1977, Michael Barton and his then-wife Barbara Barton, n/k/a Barbara Poteet (hereinafter "Barbara")[3], opened a hamburger restaurant, Captain Billy Whizzbang's Hamburgers ("Waco Captain Billy's"), in Waco, Texas. In 1978, Barbara resigned from her full time-time job as a school teacher and began working for Waco Captain Billy's on a full time basis. In 1978, Waco Captain Billy's began offering hamburger catering services in addition to its hamburger restaurant services. In 1980, Barbara and Michael Barton traveled to Dallas, Texas, to cater an event for a customer of Waco Captain Billy's catering service. Upon arrival, the customer stated, "Hey Mom. The Hamburger Man is here. Where do you want them to set up?" Following this encounter, Waco Captain Billy's adopted the name "The Hamburger Man" in association with Waco Captain Billy's catering services in the Dallas/Forth Worth Area. A 1983 advertisement placed by Barbara in the Lake Air Pee Wee football program advertised Waco Captain Billy's catering service as "The Hamburger Man."

In 1983, Michael Barton's brother, David Barton, opened a hamburger restaurant also called Captain Billy Whizzbang's Hamburgers ("David's Captain Billy's") in Arlington, Texas. David's Captain Billy's operated as a separate entity with no franchise relationship or affiliation other than the familial relationship of the two owners. David's Captain Billy's offered restaurant and catering services to its customers in the Dallas/Fort Worth area. David's Captain Billy's catering services were always advertised and offered under the name "The Hamburger Man." In 1983 and 1984, Barbara worked several catering events for David's Captain Billy's in the Dallas/Fort Worth area under the name "The Hamburger Man."

---

[3] By using the name "Barbara," the court means no disrespect to Mrs. Poteet. The use of the name "Barbara" is for convenience and to avoid confusion.

**Memorandum Opinion and Order – Page 4**

In 1983, John Poteet[4] began working full time at David's Captain Billy's. Under David Barton's direction, Mark Poteet was given training regarding the business operations of David's Captain Billy's. Mark Poteet's duties included taking orders and preparing food. Additionally, Mark Poteet personally booked parties and attended parties that David's Captain Billy's catered. Mark Poteet booked catering events for David's Captain Billy's under the name "The Hamburger Man" and attended catering events on behalf of David's Captain Billy's under the name "The Hamburger Man." David Barton also directed Mark Poteet to bring business cards to each catering event to advertise catering services offered by David's Captain Billy's under the name "The Hamburger Man." David's Captain Billy's provided business cards containing the name "The Hamburger Man" as a primary source of advertising. Mark Poteet continued working full time at David's Captain Billy's until he opened his own restaurant in October 1985.

In June 1984, Richard Barton and David Barton incorporated Tinker Inc. to operate a restaurant and catering business separate from David's Captain Billy's. At the time of Tinker Inc.'s incorporation, Richard Barton and David Barton were Tinker Inc.'s only shareholders. Richard Barton served as president of Tinker Inc.; David Barton served as vice president. At David Barton's suggestion, Tinker Inc. began using the name "The Hamburger Man" in association with Tinker Inc.'s catering services. David's Captain Billy's continued offering catering services, and David Barton remained involved in David's Captain Billy's business operations. Although Richard Barton was not involved in the business operations of David's Captain Billy's, he was aware that David's Captain Billy's offered catering services in association with the name "The

---

[4] John Poteet is Michael Barton and David Barton's first cousin.

**Memorandum Opinion and Order – Page 5**

Hamburger Man." Tinker Inc. began using the name "The Hamburger Man" in association with its catering services between 1985 and 1986.

In 1985, pursuant to an agreement with David Barton, Mark Poteet opened a hamburger restaurant also called Captain Billy Whizzbang's Hamburgers ("Mark's Captain Billy's") in Arlington, Texas. Mark's Captain Billy's did not immediately offer catering serves under the name "The Hamburger Man." On January 27, 1986, Mark Poteet incorporated his sole proprietorship, Mark's Captain Billy's, under the name "Captain Billy Whizzbang's Hamburgers, Inc."

In August 1986, Mark Poteet married Barbara and entered into a purchase agreement with David Barton in which he purchased David Barton's interest in David's Captain Billy's and acquired all of its assets (including a catering van and catering equipment) and good will. The agreement did not reserve any right or privilege to use the name "The Hamburger Man" in association with any other business, including David Barton's new business, Tinker Inc. Following the transaction, Mark Poteet transferred David's Captain Billy's into his corporation, Captain Billy Whizzbang's Hamburgers, Inc. After Mark Poteet obtained full and exclusive ownership of David's Captain Billy's, he continued to operate Mark's Captain Billy's and David's Captain Billy's under the name "Captain Billy Whizzbang's Hamburgers." He also continued to operate the catering business under the name "The Hamburger Man." In September 1986, Barbara began working with Mark Poteet for Captain Billy's Inc.

On February 9, 1990, Captain Billy's Inc. sold the David's Captain Billy's restaurant to an individual named Marvin Pinchelle ("Pinchelle"). Captain Billy's Inc. expressly reserved the exclusive right to provide any hamburger catering services. Additionally, pursuant to the contract

of sale, Captain Billy's Inc. prohibited Pinchelle's use of the name "Capt. Billy Whizbangs's Hamburgers, Inc.," or any other derivative. Moreover, Captain Billy's Inc. placed a catering restriction on the asset sale to allow Captain Billy's Inc. to exclusively continue offering catering services under the name "The Hamburger Man."

Mark Poteet continued to work at Captain Billy's Inc. until 1994 when he obtained his nursing degree and began working full time as a nurse. After Mark Poteet began working full time as a nurse, his wife, Barbara, took over the restaurant and catering business. Barbara has continuously worked and operated catering services by Captain Billy's Inc. under the name "The Hamburger Man" since Mark Poteet began working full time as a nurse. In 2000, Captain Billy's Inc. moved physical locations and discarded a substantial amount of documentation to support its prior use of the name "The Hamburger Man."

The parties stipulate that the name "The Hamburger Man" is inherently distinctive. Over the years, Captain Billy's Inc. and Tinker Inc. have both advertised their catering services under the name "The Hamburger Man." Captain Billy's Inc. has advertised its catering service under the name "The Hamburger Man" in the Dallas Fort Worth area since 1983. Captain Billy's Inc. advertises through word of mouth and business cards. In 2008, Captain Billy's Inc. created its first website at the web domain "hamburgerman.net." In 2014, after the website expired, Captain Billy's Inc. created its second website at the web domain "hamburgermancatering.com."

Tinker Inc. has advertised its catering service under the name "The Hamburger Man" since 1985 or 1986. Tinker Inc. has promoted "The Hamburger Man" through pamphlets, business cards, invoices, and T-shirts. Tinker Inc. also owns six delivery vans, each with "The Hamburger Man" printed on the sides of the vans. Tinker Inc. employees wear a T-shirt containing "The

Hamburger Man" at every catering event. In the late 1990s, Tinker Inc. created a website for its catering operation at the web domain, "the hamburgerman.com," that it still operates today.

On at least one occasion prior to 1994, advertisements for Tinker Inc. and Captain Billy's Inc. were placed side-by-side in the *Dallas Yellow Pages* under the name "The Hamburger Man." In the late 1980s, Mark Poteet attended a catering event on behalf of Captain Billy's, Inc. under the name "The Hamburger Man." Upon arrival, he was informed that Tinker Inc. also arrived to cater the same event under the name "The Hamburger Man." Following the creation of the Captain Billy's Inc. website in 2008, Tinker Inc. began experiencing some instances of customer confusion between Tinker Inc.'s catering service and Captain Billy's Inc.'s catering service. On at least one occasion, Tinker Inc.'s customers inadvertently paid Captain Billy's Inc. for a catering event performed by Tinker Inc. On September 18, 2013, Tinker Inc. filed a trademark application with the United States Patent and Trademark Office ("USPTO") to trademark the name "The Hamburger Man," (hereinafter, the "Mark"), and on May 20, 2014, the USPTO issued Tinker Inc. a trademark registration.

II. **Conclusions of Law**

A. **Trademark Infringement Claims Under the Lanham Act**

"The Lanham Act provides a cause of action for infringement where one 'uses (1) any reproduction, counterfeit, copy[,] or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution [,] or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive.'" *Americn Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008) (citation and internal quotation marks omitted).

**Memorandum Opinion and Order – Page 8**

Proof that a mark has been registered with the USPTO "constitutes prima facie evidence that the mark is valid and that the registrant has the exclusive right to use the registered mark in commerce with respect to the specified goods or services." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010) (citing Lanham Act, 15 U.S.C. §§ 1057(b) and 1115(a)). Federal registration of a mark, however, does not terminate the common law rights of a senior user. 2 McCarthy on Trademarks and Unfair Competition § 16:18.50 (4th ed.). "The nonregistered rights of a senior user continue and are not erased by the later federal registration of a junior user." *Id.*; *Board of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008) ("A mark need not be registered . . . to obtain protection because ownership of trademarks is established by use, not by registration."); *Union Nat'l Bank of Texas, Laredo, Tex. v. Union Nat'l Bank of Texas, Austin, Tex.*, 909 F.2d 839, 842-43 (5th Cir. 1990) ("The first one to use a mark is generally held to be the 'senior' user and is entitled to enjoin other 'junior' users from using the mark.").

Plaintiff's Mark is registered with the USPTO, and the parties do not dispute that the name "The Hamburger Man" is inherently distinctive. Therefore, the Mark is a legally protectable trademark, and the court determines that Plaintiff's federally registered Mark is presumed valid. The record shows that Captain Billy's Inc. and Tinker Inc. currently use the Mark in association with catering services offered in the same market. Although evidence in the record establishes that use of the Mark by Tinker Inc. and Captain Billy's Inc. is likely to cause some customer confusion, any customer confusion appears to be relatively minor, and the record reflects only a few documented instances of customer confusion over at least a twenty-five-year period.

Moreover, the parties have operated at least since the late 1980s aware of the possibility of confusion, and this lawsuit was not filed until approximately 25 years later.

Defendants argue that pursuant to the 1986 purchase agreement between David Barton and Mark Poteet, Mark Poteet acquired the goodwill and trademarks owned by David's Captain Billy's. Accordingly, Defendants contend that they are the successors-in-interest to both the good will and trademarks own and created by David's Captain Billy's, including the Mark that David's Captain Billy's first used in association with its catering business in 1983. Plaintiff argues that to the extent any use of the Mark was made in 1983, such use would have gone to Michael Barton, who was awarded all of Waco Captain Billy's following his divorce from Barbara and cannot be relied upon as use by Defendants.

As previously noted, the ownership of a mark is established by use, not by registration. *Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin*, *Tex*., 909 F.2d at 842 (footnote omitted). The first in time to use a trademark is generally held to be the "senior" user and is entitled to enjoin other "junior" users from using the mark, subject to limits imposed by the senior user's market and natural area of expansion. *Id*. at 842-43. "A mark need not be registered in order to obtain protection [under the Lanham Act] because '[o]wnership of trademarks is established by use, not by registration.'" *Smack Apparel Co.*, 550 F.3d at 475 (quoting *Union Nat'l*, 909 F.2d at 842).

A trademark is a symbol of goodwill and has no independent significance apart from the goodwill that it symbolizes. *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999) (citing *Marshak v. Green*, 746 F.2d 927, 929 (2d Cir.1984); 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 18:2 (4th ed.1999)). A trademark cannot be sold or assigned

apart from the goodwill it symbolizes, and the sale or assignment of a trademark without the goodwill that the mark represents is characterized as invalid. *Sugar Busters LLC*, 177 F.3d at 265 (*citing PepsiCo, Inc. v. Grapette Co.*, 416 F.2d 285, 287 (8th Cir.1969); 2 McCarthy § 18:3)

The record establishes that Captain Billy's Inc. is the successor-in-interest to the goodwill and trademarks owned and created by David's Captain Billy's, including the Mark. In the 1986 purchase agreement between Mark Poteet and David Barton, Mark Poteet purchased all of David Barton's interest in David's Captain Billy's and acquired all of its assets (including a catering van and catering equipment) and good will. David's Captain Billy's first used the "The Hamburger Man" Mark in association with its catering services in 1983 and has continued to use the Mark in association with its catering services through the date of trial.

The Mark is a part of the accumulated good will of David's Captain Billy's. The Mark is a symbol of goodwill associated with David's Captain Billy's and has no independent significance apart from the goodwill that it symbolizes. Mark Poteet's purchase of David Barton's interest, assets, and good will included use of the Mark. The court, therefore, concludes that as the successor-in-interest to David's Captain Billy's, Captain Billy's Inc. is the senior user of the Mark as compared to Plaintiff's first use of the Mark in 1985 or 1986. Accordingly, Plaintiff's USPTO trademark registration dated May 20, 2014, did not erase Defendants' common law rights to use the Mark, and Plaintiff's claims against Defendants for trademark infringement are barred by Defendants' senior use of the Mark.

### B. Unfair Competition Under the Lanham Act

Unfair competition claims under the Lanham Act are governed by the same standard as those for trademark infringement—the likelihood of confusion. *Scott Fetzer Co. v. House of*

**Memorandum Opinion and Order – Page 11**

*Vacuums Inc.*, 381 F.3d 477, 483 (5th Cir. 2004); *see also Matrix Essentials, Inc. v. Emporium Drug Mart*, 988 F.2d 587, 592 (5th Cir. 1993) ("As with trademark infringement, the touchstone of a section 1125(a) unfair competition claim is whether the defendant's actions are 'likely to cause confusion.'"). Thus, "[a]s a general rule, the same facts which would support an action for trademark infringement would also support an action for unfair competition." *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985).

Tinker Inc. also raises unfair competition under 15 U.S.C. § 1125 (d). The Anti-cybersquatting Consumer Protection Act provides:

> A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person (i) has a bad faith intent to profit from that mark…and (ii) registers, traffics in, or uses a domain name that—(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark.

15 U.S.C. § 1125(d)(1)(A); *E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 274 (5th Cir. 2002). As the court has determined that Captain Billy's Inc. is the senior user of the Mark, Tinker Inc.'s unfair competition claims under the Lanham Act are also barred by Defendants' senior use of the Mark.

### C. Unfair Competition Under Texas Law

"Unfair competition claims under Texas law are analyzed under the same standard as claims under the Lanham Act." *S & H Indus., Inc. v. Selander*, 932 F. Supp. 2d 754, 763 (N.D. Tex. 2013) (citing *Amazing Spaces, Inc.*, 608 F.3d at 251 (5th Cir. 2010)). As the court has determined that Tinker Inc.'s unfair competition claims under the Lanham act are barred by Defendants' senior use of the Mark, Tinker Inc.'s unfair competition claims under the Texas law are likewise barred by Defendants' senior use.

**Memorandum Opinion and Order – Page 12**

### D. Affirmative Defenses

As the court has determined that Plaintiff has failed to establish by a preponderance of evidence: (1) its trademark infringement claim under the Lanham Act; (2) its unfair competition under the Lanham act; and (3) its unfair competition claim under Texas law, Defendants' affirmative defenses are, therefore, moot, and the court will not discuss them.

### E. Defendants' Counterclaims

#### 1. Unfair Competition

Defendants allege that Tinker Inc.'s unauthorized use of the Mark constitutes unfair competition under the Lanham Act and Texas law. As the court set forth in Section B, unfair competition claims under the Lanham Act are governed by the same standard as those for trademark infringement—the likelihood of confusion. *Scott Fetzer Co.*, 381 F.3d at 483; *see also Matrix Essentials, Inc.*, 988 F.2d at 592 ("As with trademark infringement, the touchstone of a section 1125(a) unfair competition claim is whether the defendant's actions are 'likely to cause confusion.'"). Thus, "[a]s a general rule, the same facts which would support an action for trademark infringement would also support an action for unfair competition." *Marathon Mfg. Co.*, 767 F.2d at 217. Moreover, as the court set forth in Section C, "[u]nfair competition claims under Texas law are analyzed under the same standard as claims under the Lanham Act." *S & H Indus., Inc.*, 932 F. Supp. 2d at 763 (citing *Amazing Spaces, Inc.*, 608 F.3d at 251).

With respect to this counterclaim, Tinker Inc. asserts a statute-of-limitations defense. The Lanham Act does not contain a specific statute of limitations period; therefore, the court must look to state law and apply the designated period for the most comparable state law claim. Federal courts have dealt with this issue by applying the state limitations for fraud claims to claims under

the Lanham Act. The Texas statute of limitations for a Lanham Act claim is the four-year statute of limitations period applied to fraud claims under § 16.004 of the Texas Civil Practice & Remedies Code. *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 356 (5th Cir. 2011) (citing *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 859-60 (N.D. Tex. 2009) ("In Texas, a Lanham Act violation is governed by the four-year statute of limitations under Texas law." (citation and internal quotation marks omitted)). Accordingly, a four-year limitation period is applicable to Defendants' unfair competition counterclaim.

A fraud action accrues when a plaintiff discovers the fraud or could have discovered the fraud by the existence of reasonable diligence. *S.V. v. R.V.*, 933 S.W.2d 1, 35 (Tex. 1996). Accordingly, Defendants' action for unfair competition accrued when they discovered Tinker Inc.'s use of the Mark or could have discovered Tinker Inc.'s use of the mark through reasonable diligence. The record establishes that Defendants have acknowledged that Captain Billy's Inc. knew or should have known that the Mark was used in association with Tinker Inc. and Captain Billy's Inc.'s catering services since the late 1980s. Captain Billy's Inc. made the decision not sue Tinker Inc. because of the companies' familial relationship. This action and counterclaims were not filed until approximately 25 years later, which is well beyond the four-year statute of limitations. The court, therefore, concludes that Defendants' counterclaims against Tinker Inc. for unfair competition under the Lanham Act and Texas law are barred by the applicable statute of limitations.

### 2. Fraudulent Trademark Registration

Defendants' allege that Tinker Inc.'s registration was obtained by fraud in direct violation of 15 U.S.C. § 1120 and requests that the court order the Director of the USPTO to cancel Tinker

Inc.'s registration pursuant to 15 U.S.C. § 1119. To prove fraudulent procurement of a trademark, a party must show: (1) the false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the intention to induce action or refraining from action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages proximately resulting from such reliance. *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1226 (10th Cir. 2000); *San Juan Prods., Inc. v. San Juan Pools of Kansas, Inc.*, 849 F.2d 468, 473 (10th Cir. 1988); *King–Size, Inc. v. Frank's King Size Clothes, Inc.*, 547 F. Supp. 1138, 1166 (S. D. Tex. 1982). To succeed on such a claim, a plaintiff must prove by clear and convincing evidence that the defendant made false statements with the intent to deceive the USPTO. *Meineke Discount Muffler v. Jaynes*, 999 F.2d 120, 126 (5th Cir.1993).

An applicant for a trademark registration with the USPTO must sign a declaration that declares that "to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce." 15 U.S.C. § 1051. Defendants contend that when Tinker Inc. filed its application for registration it was aware of Captain Billy's Inc. superior use of the Mark. A trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the USPTO. *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009); *Meineke Disc. Muffler,* 999 F.2d at 126 ("To succeed on a claim of fraudulent registration, the challenging party must prove by clear and convincing evidence that the applicant made false statements with the intent to deceive the licensing authorities.") (citation omitted). Clear and convincing evidence must "enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *United States v. Jackson*, 19 F.3d 1003, 1007 (5th Cir. 1994) (citations and internal

**Memorandum Opinion and Order – Page 15**

quotation marks omitted). The record does not establish any evidence from which the court can reasonably infer that Plaintiff filed its application with knowledge that Captain Billy's Inc. had superior or clearly established rights, or that it intended to obtain a registration to which it believed it was not it was entitled. Further, in making credibility determinations, the court is unable to say that Tinker Inc. made false statements with the intent to deceive the USPTO. There is no way to fathom the operations of the human mind, and intent is usually proved by circumstantial evidence, unless there is an outright admission by a party or other documentary evidence to establish intent. Defendants failed to carry their burden on this issue, and, therefore, the court concludes that Plaintiff's trademark registration for the Mark was not obtained fraudulently.

### 3. Tortious Interference with Business Relations and Business Disparagement

Defendants' allege that Tinker Inc. intentionally interfered with Captain Billy's Inc.'s business relations and disparaged Captain Billy's Inc. name and reputation. Under Texas law, to prevail on claim of tortious interference with prospective business relations, a plaintiff must establish that:

> (1) there was reasonable probability that it would have entered into a business relationship with a third party; (2) the defendant either acted with conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as result.

*Sanger Ins. Agency v. HUB Int'l, Ltd.*, 802 F.3d 732, 748 (5th Cir. 2015) (quoting *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). Defendants did not present evidence at trial to establish any of the five elements necessary for a claim of tortious interference

with business relations. Therefore, the court concludes that Plaintiff did not tortiously interfere with Defendants prospective business relations.

Under Texas law, to prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex.1987)). Defendants did not present evidence at trial to establish each of the four elements of a claim for business disparagement. Barbara testified that a customer informed her that an employee of Tinker Inc. advised the customer that Captain Billy's Inc. was being sued and that Captain Billy's Inc. "did not show up to parties." A lawsuit, however, did ensue, so the information was not false or disparaging. Moreover, there is no evidence that establishes that the information was published with malice or that publication of the so-called "disparaging information" resulted in special damages, as the customer that informed Barbara of this information, nonetheless, booked a catering event through Captain Billy's Inc. Therefore, the court concludes that Plaintiff has not intentionally interfered with Captain Billy's Inc.'s business relations by disparaging its name and reputation.

### 4. Injunctive Relief

Plaintiff and Defendants both seek to enjoin the other's use of the Mark. A court may issue a permanent injunction pursuant to 15 U.S.C. § 1116. The elements of a permanent injunction are essentially the same as those for a preliminary injunction "with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success." *Amoco Prod. Co. v.*

*Village of Gambell*, 480 U.S. 531, 546 n.12 (1987). A party seeking a preliminary injunction must establish that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (citing *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (en banc)). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a preliminary injunction can be granted. *Mississippi Power & Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. The court has ruled in favor of Defendants and, as a matter of law, Tinker Inc. has not prevailed on the merits; therefore, it is not entitled to injunctive relief.

Whether Defendants are entitled to injunctive relief is a closer call. While Defendants have prevailed on the merits, Defendants' Proposed Findings of Fact and Conclusions of Law and Barbara's testimony cause the court to question the need for a permanent injunction. Defendants state, "In the event the Court is inclined to issue an injunction after over thirty years of simultaneous use of the Hamburger man Mark by both parties, Tinker should be permanently enjoined from using the Hamburger Man Mark in connection with its catering or restaurant business because Captain Billy's, Inc. is the prior user and superior owner of the trademark." Defs.' Proposed Findings of Facts and Conclusions of Law ¶ 25. The first part of the quoted sentence suggests that a permanent injunction is unnecessary. More importantly, Barbara testified that she would like for the two corporations to "co-exist," which undercuts Defendants' assertion that that

**Memorandum Opinion and Order – Page 18**

irreparable harm will result if the requested injunctive relief is not granted. The record establishes that Captain Billy's Inc. and Tinker Inc. have both permissively advertised their catering services under the name "The Hamburger Man" in essentially the same geographical area since the late 1980s. In light of the evidence and testimony of Barbara, the court concludes that a permanent injunction is unnecessary at this time, as Defendants have not established irreparable injury. The court will retain jurisdiction over this action *for the limited purpose of determining whether injunctive relief becomes necessary in the future.*

### 5. Trade Mark Cancellation

Defendants request that Tinker Inc.'s trademark registration be canceled pursuant to 15 U.S.C. § 1119. Under 15 U.S.C. § 1119, federal courts have the power to order the cancellation of registrations "[i]n any action involving a registered mark." 15 U.S.C. § 1119; *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 547 (5th Cir. 2015). As Defendants have established prior use and a likelihood of some confusion, the court determines that it is appropriate to order the USPTO to cancel Tinker Inc.'s registration to prevent further litigation regarding this action.

## III. Conclusion

For the reasons herein stated, the court **concludes** that Tinker Inc. is not entitled to recover on its claim of: (1) trademark infringement in violation of the Lanham Act; (2) unfair competition in violation of the Lanham Act and; (3) unfair competition under Texas law against Defendants.

Also, for the reasons herein stated, the court **concludes** that Defendants are not entitled to recover on their counterclaims of: (1) unfair competition in violation of the Lanham Act; (2) unfair competition under Texas law (3) trademark registration obtained by fraud; (4) tortious interference

**Memorandum Opinion and Order – Page 19**

with business relations; and (5) business disparagement against Tinker Inc. The court, however, pursuant to 15 U.S.C. § 1119, **orders** the Director of the United States Patent and Trademark Office to cancel Tinker Inc.'s trademark registration No. 4,533,012, which was registered on May 20, 2014.

Finally, any claims for attorney's fees that are sought pursuant to 15 U.S.C. § 1117(a) shall be filed in accordance with Federal Rule of Civil Procedure 54(d)(2). The court will not entertain any request for attorney's fees that does not comply with this rule. Finally, as the parties are aware, the court did not address all facts or issues set forth in the their Proposed Findings of Fact and Conclusions of Law. The court only addressed those facts and issues of law that were necessary for it to render its decision. Judgment will be issued by separate document as required by Federal Rule of Civil Procedure 58 in accordance with this memorandum opinion and order.

**It is so ordered** this 30th day of September, 2017.

Sam A. Lindsay
United States District Judge